UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES A. FLOYD,<br><br>     Plaintiff,<br><br>  v.<br><br>ADA COUNTY; STEPHEN BARTLETT; DENNIS JENSEN; SAMUEL BARNES; BARBRA LUTZ; ARMANDO IXTA; and JANE OR JOHN DOES 1-4,<br><br>     Defendants. | Case No. 1:20-cv-00347-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff James A. Floyd's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

1. **Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2.      **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

3.      **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. The events giving rise to Plaintiff's claims occurred while he was confined in the Ada County Jail.

Plaintiff asserts that an unknown officer or deputy opened his outgoing legal mail, without his consent and outside of his presence. Plaintiff sent a letter to attorney Gerald

Bublitz. He also sent a letter to the Idaho Secretary of State. *Compl.*, Dkt. 3, at 4. The envelopes containing the letters were both clearly marked with the phrases "Attorney at Law" and "Legal." *Id.* In the letters, Plaintiff asked each recipient to send a copy of the letter back to Plaintiff for his records. When Plaintiff received the copies back, he noticed that they were stamped with the phrase "Ada County Inmate Mail." *Id.* According to Plaintiff, such stamps are placed only on outgoing mail. Therefore, the mail to the attorney and to the secretary of state must have been opened, and the stamps applied, before jail authorities mailed them out to the intended recipients.

The Ada County Jail Inmate Handbook provides that mail to an attorney, as well as mail to an elected official, is considered "protected correspondence" and that, presumably, such mail is not to be opened. However, Plaintiff claims that it has "become a custom of the Ada County Jail not to follow [its] own written policy concerning legal/privileged mail. They just open all mail and determine afterward" whether the mail is considered legal mail. *Id.* at 5.

Plaintiff also claims that jail officials have retaliated against him for exercising protected conduct and have impeded his access to the courts. Ada County Jail has a policy allowing each inmate one hour per week in the law library. The jail also allegedly has an unwritten custom of prohibiting inmates from helping other inmates with their legal work. *Id.* at 9.

In March 2019, when Plaintiff was in the law library, another inmate asked Plaintiff how to file a § 1983 lawsuit regarding medical treatment. Plaintiff retrieved the

appropriate legal book and handed it to the other inmate. Defendant Barbara Lutz then told Plaintiff "to stop helping that inmate and work on his own stuff." *Id*. at 6–7.

On another occasion, Petitioner was helping another inmate on an Eighth Amendment claim regarding diabetic medical diets. Defendant Lutz once again told Plaintiff "to stop helping" the other inmate. *Id*. at 7.

In February 2019, Plaintiff asked for extra time in the law library because he was working on two conditions-of-confinement cases. He also asked for clarification of the one-hour per week policy. *Id*. at 13. Defendant Lutz replied, "If this is on your criminal case and you are pro se we try to get those people extra time. On civil matters everyone is pro se so it is harder if at all to get extra time." *Id*. at 14.

In mid- to late-March 2019, Plaintiff again requested more time in the law library and asked for "legal assistance from someone trained in the law." *Id*. at 7–8. Plaintiff's request was denied, and he filed a grievance on the issue. Defendant Lutz responded to Plaintiff's grievance as follows:

> You as well [as] all inmates in the jail are allowed 1 hour a week for research on your criminal case. I realize you have two or more lawsuits against the jail going, but the law library is being utilized the entire time it is opened. People are in the [library] with the same classification level only. As far as us furnishing an attorney we do not do this. If you need [an] attorney for your lawsuits you must hire one yourself, or talk with legal aid.

*Id*. at 8.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

Defendant Deputy Dennis Jensen agreed with Lutz's response to the grievance, stating, "When you have been given access to the law library you have used some of your time to assist other inmates rather than focus on your own legal matters." *Id*.

Plaintiff also challenges the Ada County Jail's library scheduling policy as violating his right to access the courts. The day and time of law library access for each jail inmate changes, and inmates do not know when they are going to be allowed library time. Therefore, when the scheduled time for an inmate's library use comes up, a staff member calls the inmate to the library for his weekly hour of research. *Id*. at 10.

Plaintiff alleges that, because of this policy, he potentially could be required to choose between using the law library and engaging recreation. If, for example, his library time were to come up when he was at recreation, and he chose to stay at recreation, he would forfeit his library time for the week. To avoid this potential dilemma, Plaintiff asked "if the law library and recreation schedule[s] could be coordinated so [Plaintiff] could attend both." *Id*. at 10.

Plaintiff did not receive a clear answer, so he filed a grievance. Defendant Deputy Samuel Barnes denied the grievance and responded as follows:

> Mr. Floyd the Ada County Jail provides you the opportunity to go to recreation (5) times per week for (1) hour. Per policy you do have access to the law library at certain times during the week. It is your decision to either go to recreation or the legal resources center at the offered times, at this time the schedule is set due to accomidating [sic] multiple units and other inmates in the facility.

*Id*. at 11. Deputy Jensen agreed with Barnes's response, providing the same rationale as with Plaintiff's other grievance: "When you have been given access to the law library you

have used some of your time to assist others, rather than focus on your own legal matters." *Id*.

Plaintiff submitted another concern about the issue. Defendant Armando Ixta responded:

> Mr. Floyd the law library is scheduled when you are on your out time. That is when it is available to you, if it happens to be recreation at the same time we apologize[.] [E]verything is run on a schedule at the Ada County Jail you will have to chose [sic] what is more important Rec or Law Library.

*Id*. at 12. Plaintiff states that the custom of requiring inmates to choose between recreation and library time—in the event an inmate's library time happens to be scheduled during recreation time—is unconstitutional.

Plaintiff states that these events hindered his ability to bring a non-frivolous legal claim. Plaintiff asserts that he needed to research the question of whether an inmate has a constitutional right to attend "a property deprivation hearing based upon a state established procedure of tax deed," or whether written notice is sufficient. *Id*. at 16–17. Plaintiff claims he lacked sufficient law library time to succeed on such a claim and that he "delayed filing this action until he left the Ada County Jail out of fear of more retaliation." *See id*. at 17–19. However, it appears that the claim failed not because Plaintiff did not timely file it, but because Plaintiff lost the case on summary judgment. Plaintiff claims he did not have enough library time to discover the Idaho courts' rule requiring affidavits to be sworn, and that this caused him to lose his case. *Id*. at 19–20.

Finally, Plaintiff appears to allege that he was not provided with adequate medical treatment at the Ada County Jail. Plaintiff developed a painful shoulder injury, as well as

an injury to his feet "that affected his ability to walk." *Id*. at 20. Plaintiff also claims that the jail "failed to treat [his] hep C" and, as a result, he "developed an internal injury around his liver." *Id*.

Plaintiff sues Ada County, Ada County Sheriff Stephen Bartlett, and deputies Lutz, Jensen, Barnes, and Ixta. He seeks monetary damages. *Id*. at 20–21.

**4.    Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or

her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09.

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

Defendants who were involved in reviewing claims in the administrative grievance process may or may not have liability for the constitutional violations complained of regarding the grievances they processed, depending upon (1) the type and timing of problem complained of and (2) the role of the defendant in the process. For example, a grievance appeals coordinator cannot cause or contribute to a completed constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does

not"). If, however, the defendant "knew of an ongoing constitutional violation and … had the authority and opportunity to prevent the ongoing violation," yet failed to act to remedy the violation, then the defendant may be liable under § 1983. *See Herrera v. Hall*, 2010 WL 2791586 at *4 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

To bring a § 1983 claim against a municipality such as Ada County, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    First Amendment Claims

Prisoners do not forfeit all of their rights simply because they are prisoners. However, many constitutional rights are appropriately restricted within prison walls, and such restrictions are "justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979) (internal quotation marks omitted).

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals" of that corrections system. *Id.*

In *Turner v. Safley*, 482 U.S. 78 (1987), the U.S. Supreme Court outlined the legal standard governing First Amendment claims of inmates. In that case, the Court examined

a First Amendment issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions.

The *Turner* Court held that "when a prison regulation [or official action] impinges on inmates' constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The Court identified four factors to consider when determining whether such a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test in a way that "accord[s] great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

Plaintiff asserts that Defendants violated the following First Amendment rights: (1) the right to be free from interference with inmate mail, particularly legal mail; (2) the right to free speech and free association; (3) the right petition the government for redress of grievances, particularly the right to access the courts; and (4) the right to be free from retaliation for engaging in protected conduct.

i.      Interference with Mail Claims

Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Different standards apply to restrictions on inmate mail, depending on whether the mail is considered legal mail or non-legal mail. Legal mail is mail from an attorney to an inmate, or from an inmate to an attorney. *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *as amended*, 135 F.3d 1318 (9th Cir. 1998) (holding that mail from a court is not legal mail).

Because inmates do not have a right to "freedom from inspection or perusal" of their mail, prison officials have the right to open and to inspect an inmate's incoming or outgoing mail, even an inmate's legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). "Nothing prevents the [Idaho Department of Correction] from *inspecting* an inmate's outgoing mail, in his presence, to make sure that it does not contain, for example, a map of the prison yard, the time of guards' shift changes, escape plans, or contraband." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (*Nordstrom I*). However, "prisoners have a protected First Amendment interest in having properly marked legal mail opened [and inspected] only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also Nordstrom v. Ryan*, 856 F.3d 1265,

1272 (9th Cir. 2017) (*Nordstrom II*). Additionally, if the legal mail is between an inmate and his criminal defense attorney, the inmate also has "a Sixth Amendment right to be present when legal mail related to [the] criminal matter is inspected." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017).

"[E]ven a single instance of improper reading of a prisoner's [legal] mail can give rise to a constitutional violation." *Id.* at 1197; *see also Hayes*, 849 F.3d at 1212 ("[A] plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory."). However, the negligent opening of an inmate's legal mail outside the inmate's presence does not rise to the level of a constitutional violation and, therefore, does not violate § 1983. *Id.* at 1218 ("An allegation that prison officials opened a prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.") (Bybee, J., concurring); *id.* at 1212 ("Hayes has alleged a plausible claim that his protected mail was *arbitrarily or capriciously* opened outside his presence on two separate occasions.") (emphasis added); *see Kingsley*, 576 U.S. at 396 ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process."). Finally, to state a colorable First Amendment claim that legal mail was opened outside the presence of an inmate, the plaintiff must allege that the mail was to or from an attorney and that the mail "was properly marked as 'legal mail.'" *Hayes*, 849 F.3d at 1211.

Plaintiff alleges that the unidentified deputy who opened the two pieces of Plaintiff's outgoing mail violated the First Amendment. As an initial matter, the letter Plaintiff wrote to the secretary of state was not legal mail, because it was not mail to an attorney. *See Keenan*, 83 F.3d at 1094.

With respect to the letter from Plaintiff to the attorney, Plaintiff has sufficiently alleged that the letter was legal mail and was clearly marked as legal mail. However, Plaintiff has not plausibly alleged that the deputy who opened the letter outside of Plaintiff's presence did so pursuant to a policy or custom of Ada County. Indeed, jail policy protects outgoing legal mail from such opening. Plaintiff's generalized statement that it has become an unwritten custom for deputies to open legal mail in violation of that written policy is insufficient.

Additionally, Plaintiff has no viable § 1983 claim based on the deputy's violation of the Ada County written policy regarding legal mail. This is because violations of prison policies cannot support a § 1983 claim. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

ii.      Freedom of Speech and Association Claims

As explained in *Turner v. Safley*, a jail or prison can restrict an inmate's speech so long as the restriction is "reasonably related to legitimate penological interests." 482 U.S. at 89 (1987). Further, the First Amendment right to freedom of association "is among the rights least compatible with incarceration," *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). This right is "necessarily curtailed by the realities of confinement." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977). The right to free association

may be restricted "whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." *Id.*

Plaintiff claims that Deputy Lutz unconstitutionally deprived Plaintiff of his First Amendment right to help other inmates with their legal work. However, inmates do not have a constitutional right to provide such legal assistance "beyond the protection normally accorded [inmates'] speech." *Shaw v. Murphy*, 532 U.S. 223, 231 (2001). Instead, the Court must analyze Plaintiff's freedom of speech and association claims under *Turner*.

The Complaint does not state a plausible free speech or free association claim. "[I]t is … well-established that prison officials are permitted to regulate the time, place, and manner in which library facilities are used so that all inmates can access the law library in a secure and orderly manner." *Lerajjarean-Ra-O-Kel-Ly v. Johnson*, No. 1:09-CV-645-MHW, 2010 WL 11531282, at *3 (D. Idaho Sept. 13, 2010) (unpublished). (citing *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985)). An inmate who is not using library time on his own legal work is taking away the chance for another inmate, who might very much need to use the law library, to do so. Thus, requiring inmates to use their time in the library on their own legal work promotes fair treatment of all inmates, and the jail's alleged custom of prohibiting inmates from helping

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

others with their legal work is reasonably related to the legitimate goal of ensuring fair

access to the library for all inmates.

           iii.            Access to Courts Claims

Prisoners have a right to access the courts, which stems from the First

Amendment's protection of the right to petition the government for redress of grievances.

*See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, because the right to access the

courts is not an "abstract, freestanding right to a law library or legal assistance, an inmate

cannot establish relevant actual injury simply by establishing that his prison's law library

or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S.

343, 351 (1996). Although the existence of a law library "does not provide for

meaningful access to the courts if the inmates are not allowed a reasonable amount of

time to use the library," jail or prison officials may impose reasonable regulations

"regarding the time, place, and manner in which library facilities are used." *Lindquist*,

776 F.2d at 858.

To state a viable access-to-courts claim, a plaintiff must plausibly allege that he

suffered an actual injury as a result of the defendant's actions. *Id.* at 349. Actual injury

may be manifest if the alleged denial of access "hindered [the plaintiff's] efforts to pursue

a legal claim," such as having his complaint dismissed "for failure to satisfy some

technical requirement," or if he "suffered arguably actionable harm that he wished to

bring before the courts, but was so stymied by [the defendants' actions] that he was

unable even to file a complaint." *Id.* at 351.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

The Constitution does not require that inmates "be able to conduct generalized research," nor does it "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id*. at 355, 360. Rather, the right of access to the courts requires only that inmates "be able to *present* their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360 (emphasis added). Further, as with all § 1983 claims, a plaintiff cannot state an access to courts claim by alleging that a negligent act by a government official caused the actual injury of which the plaintiff complains. *Krug v. Lewis*, 852 F.2d 571 (Table), 1988 WL 74699, *1 (9th Cir. July 6, 1988) ("While prisoners have a due process right of access to the courts, the negligent act of a public official does not violate that right.") (unpublished) (citing *Daniels*, 474 U.S. at 333).

The right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *Lewis*, 518 U.S. at 354–55; *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials.") (emphasis omitted), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355 (emphasis omitted).

Claims of denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (a forward-looking access claim) or from the loss of a suit that now cannot be tried (a backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 413-15 (2002). A complaint alleging a denial of access to the courts must plausibly allege that the plaintiff suffered, or will suffer, the loss of a past or present litigating opportunity. The plaintiff must assert facts supporting three elements: (1) official acts that frustrated the inmate's litigation activities; (2) the loss (or expected loss) of a "nonfrivolous" or "arguable" underlying claim that must be set forth in the federal complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) that the remedy sought through the access to courts claim is not otherwise available in another suit that could be brought. *Id.* at 415-17. "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id*. at 415.

A prisoner asserting an access to courts claim must also allege facts showing that the alleged violation of his rights was proximately caused by a state actor. *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, *Hust v. Phillips*, 550 U.S. 1150 (2009); *see also Crumpton*, 947 F.2d at 1420. The proximate cause analysis focuses on whether it was foreseeable that the state actor's conduct would result in a deprivation of the prisoner's right of access to the courts. *Phillips*, 477 F. 3d at 1077

(citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 784-85 (9th Cir. 2000)).

Plaintiff alleges that the restrictions on how long and how frequently he could use the law library constitute a denial of his right to access the courts. However, the claim Plaintiff alleges he was prevented from adequately pursuing was not asserted in a direct appeal from a criminal conviction or a habeas petition, nor was it a claim challenging the conditions of his confinement. Instead, it was a claim that he received insufficient notice of a property deprivation hearing. This claim does not qualify for access-to-courts protection. *See Lewis*, 518 U.S. at 354–55; *Silva*, 658 F.3d at 1103.

Moreover, the Complaint establishes that Plaintiff was not prevented from pursuing his notice claim. He was able to file a lawsuit and proceeded all the way to summary judgment. Although an inmate has "a right to bring to court a grievance that the inmate wishe[s] to present," he does not have a right to government-provided legal assistance allowing him "to *litigate effectively* once in court." *Lewis*, 518 U.S. at 354.

Finally, as explained above with respect to Plaintiff's free speech and association claims, the restrictions on use of the law library are reasonably related to a legitimate penological goal—ensuring "that all inmates can access the law library in a secure and orderly manner." *Lerajjarean-Ra-O-Kel-Ly v. Johnson*, 2010 WL 11531282, at *3. Thus, Plaintiff's access to courts claims are implausible.

iv.    Retaliation Claims

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following:

INITIAL REVIEW ORDER BY SCREENING JUDGE - 20

"(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger

of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. The state

unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

Plaintiff appears to allege that Defendants' denial of his requests for extra library time constituted retaliation for Plaintiff's exercise of free speech in helping other inmates with their legal work. However, Plaintiff has not plausibly alleged that any Defendant denied these requests out of an impermissible motive. Instead, the "obvious alternative explanation" is that these requests were denied because Plaintiff was not using his library time to work on his legal issues—which is the very purpose for law library time in the first place. *Iqbal*, 556 U.S. at 682. Moreover, there is nothing to suggest that being denied *extra* library time would chill or silence a person of ordinary firmness from engaging in protected activity. Therefore, the Complaint does not state a plausible retaliation claim.

### B.     *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a

subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical and mental health treatment while incarcerated. Jail officials and jail medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very

INITIAL REVIEW ORDER BY SCREENING JUDGE - 24

purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at

835. A prison official or prison medical provider acts with deliberate indifference "only if

the [prison official or provider] knows of and disregards an excessive risk to inmate

health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)

(internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los

Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison

official must not only 'be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at

837).

    In the medical context, deliberate indifference can be "manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment

once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or

negligence does not support a cause of action under the Eighth Amendment, *Broughton v.

Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical

treatment does not violate the Eighth Amendment unless that delay causes further harm,

*McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside

medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th

Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical

care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* actually know of a substantial risk to inmate health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's

INITIAL REVIEW ORDER BY SCREENING JUDGE - 26

preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

If Plaintiff was a pretrial detainee—rather than a convicted inmate—at the time his claims arose, his medical treatment claims must be analyzed differently. A pretrial detainee's right to adequate medical treatment stems not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Medical treatment claims of pretrial detainees are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.

Plaintiff's allegations surrounding his medical treatment are woefully vague. He alleges simply that he has been injured, that he has Hepatitis-C, and that he has not been provided with adequate medical treatment. These assertions do not support a reasonable

INITIAL REVIEW ORDER BY SCREENING JUDGE - 27

inference that any Defendant has violated Plaintiff's due process or Eighth Amendment right to adequate medical care.

Additionally, Plaintiff's medical treatment claims against unidentified jail medical providers would be better pursued in a separate civil rights lawsuit. This is because "[u]nrelated claims against different defendants belong in different suits," in part "to ensure that prisoners pay the required filing fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (relying on Fed. R. Civ. P. 18(a). A "buckshot complaint" alleging, for example, "that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions [] should be rejected" under the Prison Litigation Reform Act. *Id*. If Plaintiff intends to assert medical treatment claims under the Due Process Clause or the Eighth Amendment, he should do so in a separate action.

## 5.    Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see*

*also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In addition, Plaintiff must include facts showing that Plaintiff can meet the *Monell* requirements (explained in detail above) if Plaintiff continues to name Ada County as a defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 29

1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    The Complaint fails to state a claim upon which relief may be granted.

      Plaintiff has 60 days within which to file an amended complaint as

INITIAL REVIEW ORDER BY SCREENING JUDGE - 30

described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Any amended complaint will be limited to 20 pages. *See* General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(a). Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

2.      Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED without prejudice. Plaintiff may renew the request for counsel if he files an amended complaint.

DATED: October 13, 2020

B. Lynn Winmill
U.S. District Court Judge

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 31